342 P.2d 700

Jerold L. WOOD, Plaintiff-Appellant,

v.

BOISE JUNIOR COLLEGE DORMITORY HOUSING COMMISSION, Defendant-Respondent.

No. 8797.

Supreme Court of Idaho.

July 14, 1959.

Willis C. Moffatt, Boise, for respondent.

Randall Wallis, Boise, for appellant.

ly state that the commission shall not be an agency of the junior college district.

Appellant commenced this action to secure a final expression from this Court as to the constitutional validity of our statutes authorizing this statutory commission to issue bonds and other evidence of obligations.

To further the education of residents in this State, there is authorized the creation of junior college districts, taxing units, one of which is the Boise Junior College District. It is admitted that the defendant proposes to execute revenue bonds or other forms of security payable out of revenues obtained from housing projects.

Our Constitution, Article 8, section 3, limits the extent to which a taxing unit may incur indebtedness or liability. As amended, this section reads as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest

McQUADE, Justice. ·

Plaintiff is a resident within the Boise Junior College District, Ada County, Idaho, and brings this action on behalf of himself and others similarly situated. The defendant is created under I.C. §§ 33–2122 to 33–2141, inclusive, and is by the statute "an independent public body corporate and politic," I.C. § 33–2124. It is known as a dormitory housing commission, limited to obtaining or constructing adequate, low-cost dormitories for students attending the Boise Junior College. These statutes significant-

on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state and provided further that any city or village may own, purchase, construct, extend, equip, within and without the corporate limits of such city or village, water systems and sewage collection systems, and water treatment plants and sewage treatment plants, and off street parking facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two-thirds of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such systems, plants, and facilities as may be prescribed by law."

Contrary to the majority of other State courts, we have taken the view that no subdivision of the State of Idaho referred to in Article 8, section 3, may issue bonds or other evidence of obligations unless such indebtedness or liability is approved by two-thirds of the qualified electors of the taxing unit, regardless of a limitation expressed in the written obligation that the taxpayers would not be obligated thereby. Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643, 43 L.R.A.,N.S., 1095; State Water Conservation Board of Idaho v. Enking, 56 Idaho 722, 58 P.2d 779. See also Schmidt v. Village of Kimberly, 74 Idaho 48, 256 P.2d 515, and the cases and authorities enumerated therein.

. In 1939, the Legislature of the State of Idaho enacted a "Housing Authorities Law," 1939 Session Laws, chapter 234, I.C. § 50–4401 et seq. The purpose of the 1939 act was to create a corporate body ancillary to each city, to furnish low-cost, sanitary housing when needed. These corporations do not have the power of taxation. By that act, financing of the housing units was to be accomplished by the non-taxing units' issuing bonds and other evidences of obligations to the United States of America and its agencies, or otherwise, to be paid by revenues from their properties. These obligations did not require the approval of two-thirds of the voters residing within the municipalities.

In Lloyd v. Twin Falls Housing Authority, 62 Idaho 592, 113 P.2d 1102, this Court held the 1939 housing act to be constitutional in reference to Article 8, section 3, of the Idaho Constitution. Among other announcements, the Lloyd case held the hous-

ing authority was not a county, city, town, township, board of education, or school district, or other subdivision of the State of Idaho, within the meaning of this section of the Constitution. The Lloyd case further explained that the housing authority was not a taxing unit of the State of Idaho as contemplated in Article 8, section 3, supporting this reasoning by the case of State ex rel. Miller v. State Board of Education, 56 Idaho 210, 52 P.2d 141.

In 1956, this Court handed down O'Bryant v. City of Idaho Falls, 78 Idaho 313, 303 P.2d 672, which has provoked this case. O'Bryant ruled that a so-called "cooperative" created to distribute gas within the City of Idaho Falls was not a cooperative, but was in fact the alter ego of the city, and therefore void; O'Bryant also said Article 8, section 3, of the Constitution prevented the city from issuing obligations without the required assent of the voters.

In 1957, the Legislature enacted legislation permitting the creation of dormitory housing commissions in junior college districts. This legislation is to all intents and purposes identical with those statutes creating city housing authorities, ruled upon in the Lloyd case.

The trial court, sitting without a jury, decided this case upon the complaint and answer. Judgment of that court was in favor of the Boise Junior College Dormitory Housing Commission. The court ruled the statutes authorizing the Dormitory Housing Commission to issue bonds and other obligations without approval of the voters to be constitutional.

This Court has decided all questions presented here in the Lloyd case. However, counsel for the plaintiff urges that the O'Bryant case alters a portion of the rule in the Lloyd case. The question which counsel earnestly seeks a determination of is whether the commission is the alter ego of the junior college district. Counsel for the plaintiff earnestly urges that the trustees have that degree of control over the housing commission to the extent that the commission becomes an integrated part of the junior college district. Some of the control cited is that the housing commission cannot act until the trustees declare there is a need for housing; that employees of the commission may be employees of the district; that the housing commissioners may be removed on complaint of the junior college district trustees; that the junior college district has supervision over the students; that rents to be charged by the housing commission shall be comparable with those of other Boise Junior College rental facilities; that the housing commissioners confer and cooperate with the college district trustees; that the housing commission must file a financial report with the clerk of the college district; and upon payment of the obligations, the property shall be transferred to the college district.

In enacting legislation permitting the creation of the housing commissions, clearly the Legislature intended a high degree of cooperation to exist between the junior college districts and the housing commissions for the purpose of providing students of the district with satisfactory housing. Their activities and control must be interrelated to the extent that satisfactory housing be provided to those students wishing to take advantage of educational facilities of the junior college district.

The degree of control exercised does not usurp the powers and duties of the housing commissioners. The housing commission is a separate entity from the Boise Junior College District, created pursuant to statutes of this State, and does not impose an obligation upon the taxpayers of the junior college district.

Idaho statutes creating junior college housing commissions have the following provisions which separate them from the control of junior college districts: (1.) In each junior college district of the State of Idaho, there is created an independent public body corporate and politic, to be known as a dormitory housing commission, which shall not be an agency of the junior college district. (2.) The governor of Idaho appoints the housing commissioners for specific terms. (3.) Powers of the commission shall be vested in the commissioners. (4.) Commissioners have the responsibility of hiring employees. (5.) Commissioners may be removed only by the governor of Idaho. (6.) The housing commissions have the power to sue and be sued; (7.) to own and operate properties; (8.) to enter into contracts relating to its corporate purpose. (9.) The commission shall not operate for profit. (10.) The commissioners may in their discretion issue bonds.

The interrelated activities of the housing commissions and the junior college districts are not of such quality, character, and control as to indicate the defendant housing commission is the alter ego of the Boise Junior College District. Powers and duties of the housing commissioners cannot be usurped by the junior college district trustees. The close association at most shows two independent public boards closely cooperating for the purpose of furnishing facilities in furtherance of education.

Those statutes authorizing the dormitory commission to issue bonds and obligations and to incur indebtedness are constitutional under Article 8, section 3.

The judgment is affirmed.

Costs to respondent.

PORTER, C. J., and TAYLOR, SMITH, and KNUDSON, JJ., concur.